1

2

3

4                            UNITED STATES DISTRICT COURT

5                                  DISTRICT OF NEVADA

6                                        * * *
                                          )
7    MID-OHIO SECURITIES CORP.,           )
                                          )               2:10-CV-01975-PMP-GWF
8               Plaintiff,                )
                                          )                      ORDER
9    v.                                   )
                                          )
10   THE ESTATE OF LAWRENCE D.            )
     BURNS,                               )
11                                        )
                Defendant.                )
12                                        )

13          Presently before the Court is Plaintiff Mid-Ohio Securities Corp.'s Motion to

14   Vacate Arbitration Award and to Stay Proceedings to Enforce Arbitration Award (Doc. #1),

15   filed on November 10, 2010.  Plaintiff Mid-Ohio Securities Corp. filed a Supplemental

16   Memorandum (Doc. #20) on January 10, 2011.  Defendant The Estate of Lawrence D.

17   Burns filed an Opposition (Doc. #23) and Cross-Motion to Confirm FINRA Arbitration

18   Award (Doc. #22) on March 11, 2011.  Plaintiff filed a Reply (Doc. #25) and an Opposition

19   to Defendant's Cross-Motion (Doc. #26) on March 21, 2011.  Defendant filed a Reply

20   (Doc. #27) on March 31, 2011.  The Court held a hearing on these motions on June 10,

21   2011.  (Mins. of Proceedings (Doc. #30).)

22   **I. BACKGROUND**

23          Plaintiff Mid-Ohio Securities Corp. ("Mid-Ohio") is a broker-dealer and was a

24   passive custodian of self-directed individual retirement accounts ("IRAs").  (Pl. Mid-Ohio

25   Securities Corp.'s Supplemental Memo in Support of its Mot. to Vacate Arbitration Award

26   (Doc. #20) ["Supp. Memo"], Ex. 2 at 328.)  In late February 2002, Lawrence Burns filled

out an application for a traditional IRA account with Mid-Ohio.  (Supp. Memo., Ex. 3.)
Lawrence Burns designated Epifania B. Burns ("Epifania"), his wife, as the primary
beneficiary on the account.  (Id.)  That same date, Lawrence Burns filled out a Direction of
Investment form, in which he directed that all of his funds be invested with Cumberland
Enterprise Holding, LLC ("Cumberland").  (Supp. Memo., Ex. 5.)  On March 5, 2002,
Lawrence Burns wired over $300,000 to Mid-Ohio.  (Supp. Memo., Ex. 4.)  Pursuant to
Lawrence Burns' instructions, Mid-Ohio invested the funds with Cumberland on March 6,
2002.  (Supp. Memo., Ex. 6.)

Lawrence Burns received periodic payments from Cumberland which Mid-Ohio
distributed to Lawrence Burns per his instructions.  (Supp. Memo, Ex. 2 at 369-70.)
However, in July 2005, Lawrence Burns called Mid-Ohio and informed them the
Cumberland investment was worthless.  (Supp. Memo, Ex. 2 at 371-72.)  Lawrence Burns
passed away on July 7, 2007.  (Supp. Memo., Ex. 9 at 98.)

In September 2009, a Statement of Claim was filed with the Financial Industry
Regulatory Authority ("FINRA"), of which Mid-Ohio is a member, requesting arbitration of
a dispute over Mid-Ohio's handling of Lawrence Burns' account.  (Supp. Memo., Ex. 10;
Def. Epifania Burns' Mem. of P. & A. (Doc. #24) ["Opp'n"], Ex. 1.)  The Statement of
Claim identified the claimant as "The Estate of Lawrence D. Burns, By its Executor,
Epifania B. Burns."  (Supp. Memo., Ex. 10.)  The Statement of Claim asserted that Epifania
Burns was "the executor of her deceased husband's estate and she was also the sole
beneficiary for his IRA."  (Id.)  The Statement of Claim claimed that Mid-Ohio was
required to perform basic due diligence with regard to its customers' holdings, and that it
failed to do so with respect to Lawrence Burns' investment in Cumberland.  (Id.)  The
Statement of Claim contended Mid-Ohio should have realized Cumberland was a fraud
based on several red flags, and therefore asserted claims for negligence and breach of
contract, and sought compensatory damages of approximately $290,000, attorneys' fees,

1   costs, interest, and punitive damages.  (Id.)

2          The Estate of Lawrence Burns and Mid-Ohio agreed to submit the matter to

3   arbitration, and thereby agreed to be bound by the FINRA bylaws, rules, and code of

4   procedure.  (Opp'n, Ex. 16.)  Mid-Ohio filed an Answer in which it asserted the claims

5   were ineligible for arbitration under the FINRA rules because the claims were brought more

6   than six years from the date the securities were purchased (the "eligibility issue").  (Opp'n,

7   Ex. 17.)  In its Answer, Mid-Ohio stated that Epifania was bringing the claims "in her

8   capacity as Executor of her husband's estate and as the primary beneficiary."  (Id. at 2; see

9   also Opp'n, Ex. 22 at 2 (Mid-Ohio's Pre-Hearing Brief states "Claimant, in her capacity as

10  Executor of her husband's estate and as the primary beneficiary, now sues Mid-Ohio

11  . . . .").)

12         Mid-Ohio filed a motion to dismiss before the arbitration panel, raising the

13  eligibility issue.  (Supp. Memo., Ex. 12; Opp'n, Ex. 19.)  The arbitration panel denied the

14  motion to dismiss without comment.  (Supp. Memo., Ex. 12.)

15         During the hearing before the arbitration panel, Epifania testified that following

16  her husband's death, she did not file anything in probate court, there was no will, and no

17  estate was created.  (Supp. Memo., Ex. 9 at 98-99.)  She was not appointed by any court to

18  be the executor or legal representative of Lawrence Burns' estate.  (Id. at 99-100.)  Rather,

19  she indicated she was the beneficiary of the IRA.  (Id.)  Upon hearing these facts,

20  Mid-Ohio's counsel, Kenneth Bravo, moved to dismiss for lack of standing, arguing that the

21  "case is brought supposedly in the name of the executor of the estate.  I think we've just

22  established there is no estate and no executor."  (Id. at 100-01.)  The following colloquy

23  then took place:

24         CHAIRMAN LUM:   Well, there's an IRA so she's the beneficiary if
                            she is the beneficiary.
25
26         MR. BRAVO:        Okay.  But that's not how she's brought–

                                      3

| | | |
|---|---|---|
| 1 | CHAIRMAN LUM: | But his mistake in labelling it, you know– |
| 2 | MR. OAKES: | And Mr. Chairman, they even note in their |
| 3 | | answer, "Claimant in her capacity as the executor of her husband's estate and as the primary beneficiary– |
| 4 | CHAIRMAN LUM: | Well, I'm not going to rely on that, but just |
| 5 | | because she's mislabelled, you know, everybody's here.  Let's move forward with it, |
| 6 | | and your objection is noted. |

7   (Id. at 101.)  The hearing thereafter continued, and the panel heard testimony from

8   Epifania's expert that if Mid-Ohio had performed due diligence as it was supposed to, it

9   may have uncovered the fraud at Cumberland and prevented Lawrence Burns from

10   investing in it.  (Opp'n, Ex. 8 at 176-77, 202, 237-38.)

11        In closing, Mid-Ohio raised both the standing and eligibility issues.  (Opp'n, Ex.

12   8 at 479-80.)  Epifania Burns' counsel responded by attempting to submit to the panel a new

13   uniform submission agreement "in case the panel decides that they want to style the award

14   in the name of Epifania Burns, both individually and as executor of the estate."  (Pl.'s Reply

15   (Doc. #25), Ex. 22 at 498.)  Mid-Ohio objected.  (Id.)  The following colloquy then took

16   place:

| | | |
|---|---|---|
| 17 | CHAIRMAN LUM: | I can call the NASD and have them decide that, |
| 18 | | but– |
| 19 | MR. OAKES: | It's for the panel's consideration.  You know, I don't think it's important, but I wanted the panel |
| 20 | | to have that. |

21   (Id.)  Later, the following exchange took place:

| | | |
|---|---|---|
| 22 | CHAIRMAN LUM: | Mr. Bravo, in the event the panel does find for |
| 23 | | claimant, the award would be titled the way that this original submission was made, okay.  That |
| 24 | | I'll give, I'll pass that on to the case administrator, and she will decide what to do |
| 25 | | with it as far as the renaming on the case. |
| 26 | MR. BRAVO: | I just want the record to note my objection.  I think it's far too late– |

| | | |
|---|---|---|
| 1 | CHAIRMAN LUM: | Correct, and that's why I'm passing it on to the case administrator. So in the event we do find for claimant, then it will be exactly worded as they brought the suit. |

(Pl.'s Reply, Ex. 23 at 505.)

The arbitrators awarded Estate of Lawrence Burns $280,683.50 in compensatory damages, but denied the request for punitive damages. (Pet. for Judicial Review, Ex. 1 at 2.) Following issuance of the award, Epifania requested clarification of the award by altering the styling of the case to reflect Epifania brought the claims in her capacity as sole beneficiary of the IRA. (Pl.'s Reply, Ex. 24.) Mid-Ohio objected, contending that rather than making a clarification, Epifania was attempting to change the identify of the claimant to a different party after the hearing was completed. (Id.) The arbitrators did not respond to the request, and under FINRA rules, their failure to act after a certain period of time constituted a denial of the request. (Pl.'s Reply, Ex. 25.)

Mid-Ohio now moves to vacate the award. Mid-Ohio argues that the party that brought the action, The Estate of Lawrence Burns through its Executor Epifania Burns, did not exist, as Epifania did not open an estate for her late husband and was not appointed as her husband's estate administrator. Mid-Ohio argues that because the party in whose name the action was brought did not exist, the purported claimant had no standing. Mid-Ohio argues the arbitration panel manifestly disregarded the law when it refused to dismiss the action after these facts were brought to the panel's attention.

Mid-Ohio also contends the panel manifestly disregarded the law by ignoring FINRA Rule 12206 which provides that to be eligible for arbitration, claims must be brought within six years from the event or occurrence giving rise to the claims. Mid-Ohio contends that because all relevant conduct by Mid-Ohio occurred in March 2002, the claimant had to bring a claim by March 2008 or such a claim is barred. Mid-Ohio contends it brought this defect to the arbitration panel's attention, but the panel did not dismiss.

1    Epifania responds by opposing the motion to vacate and by cross-moving to

2  confirm the award.  Epifania argues that Mid-Ohio stated in its own Answer and brief that

3  Epifania was the claimant in both her capacity as executor and as primary beneficiary of the

4  IRA, and regardless of whether the award went to her or her husband's estate, she was the

5  person entitled to the funds.  With respect to timeliness under FINRA rule 12206, Epifania

6  argues the panel was free to use the discovery rule, when damages occurred, or when the

7  claim accrued as the event or occurrence triggering the clock for the six-year period.

8  Epifania contends that because Lawrence Burns did not discover Cumberland was a fraud

9  until 2005, the panel was within its discretion to toll the eligibility period.  Epifania also

10  contends that whether a claim is eligible for arbitration is itself a question for the arbitration

11  panel, and is not reviewable.  Epifania argues that even if the arbitration panel erred with

12  respect to standing or eligibility, Mid-Ohio cannot show the panel's ruling resulted in

13  substantial injustice.

14  **II. DISCUSSION**

15    Pursuant to Section 9 of the Federal Arbitration Act ("FAA"), if the parties have

16  agreed "that a judgment of the court shall be entered upon the award made pursuant to the

17  arbitration," then "any party to the arbitration may apply to the court . . . for an order

18  confirming the award, and thereupon the court must grant such an order unless the award is

19  vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C.

20  § 9. Section 10 of the FAA sets forth the circumstances under which a court may vacate an

21  arbitration award:

22        (1) where the award was procured by corruption, fraud, or undue
         means;
23        (2) where there was evident partiality or corruption in the arbitrators,
         or either of them;
24        (3) where the arbitrators were guilty of misconduct in refusing to
         postpone the hearing, upon sufficient cause shown, or in refusing to
25        hear evidence pertinent and material to the controversy; or of any other
         misbehavior by which the rights of any party have been prejudiced; or
26        (4) where the arbitrators exceeded their powers, or so imperfectly

1    executed them that a mutual, final, and definite award upon the subject
     matter submitted was not made.
2

3   9 U.S.C. § 10(a).

4       The Court may vacate an award where the arbitrators' decision is in manifest

5   disregard of the law.  Johnson v. Wells Fargo Home Mortg., Inc., 653 F.3d 401, 414-15 (9th

6   Cir. 2011).  "Although the words 'manifest disregard for law' do not appear in the FAA,

7   they have come to serve as a judicial gloss on the standard for vacatur set forth in FAA

8   § 10(a)(4)."  Id.  Manifest disregard of the law means "something beyond and different

9   from a mere error in the law or failure on the part of the arbitrators to understand and apply

10  the law."  Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007) (quotation

11  omitted).  Rather, "[i]t must be clear from the record that the arbitrator [ ] recognized the

12  applicable law and then ignored it."  Comedy Club, Inc. v. Improv West Assocs., 553 F.3d

13  1277, 1290 (9th Cir. 2009) (quotation omitted).  "Moreover, to rise to the level of manifest

14  disregard [t]he governing law alleged to have been ignored by the arbitrators must be well

15  defined, explicit, and clearly applicable."  Collins, 505 F.3d at 879-80 (quotation and

16  emphasis omitted).

17      The Court's review of an arbitration award is highly deferential.  Poweragent Inc.

18  v. Elec. Data Sys. Corp., 358 F.3d 1187, 1193 (9th Cir. 2004).  The arbitrator need not

19  explain his rationale for an award, and the Court should confirm an award if "a ground for

20  the arbitrator's decision can be inferred from the facts of the case."  D.H. Blair & Co., Inc.

21  v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quotation omitted).  "Only a barely

22  colorable justification for the outcome reached by the arbitrators is necessary to confirm the

23  award."  Id. (quotation omitted).  The party moving to vacate the award bears the burden of

24  proof.  Id.; Collins, 505 F.3d at 879.

25  ///

26  ///

**A. Standing**

Mid-Ohio argues the panel manifestly disregarded the law because Mid-Ohio established that the entity which brought the claims did not exist, and therefore lacked standing. Mid-Ohio contends that because Epifania never created an estate for her late husband and was not a court-appointed executor or administrator, the claimant Estate of Lawrence D. Burns did not exist, Epifania lacked legal authority to pursue claims on its behalf, and she therefore lacked standing.

Epifania responds that Mid-Ohio knew and recognized that Epifania was the primary beneficiary of the IRA and, as such, she had standing to pursue the claim in her own right. Epifania contends that when she filed the claim, she was unsure whether she was designated as the sole beneficiary on the IRA and that is why she styled the case as she did. But, through discovery and by the time of the hearing, it was clear Epifania was the beneficiary and had standing to bring the claim. Epifania argues that even if the panel erred by not granting Mid-Ohio's oral motion to dismiss, Mid-Ohio has failed to show it provided the panel with the applicable law and the panel then ignored that law. Epifania contends that at best, Mid-Ohio has shown an error, not manifest disregard. Epifania argues that the styling of the case and award will have no effect on who receives the fund as she is the primary beneficiary, the executor of Lawrence Burns' will, the court-appointed executor, and the trustee of his trust.

Nevada law provides that "when a person who has a cause of action dies before judgment, the damages recoverable by the decedent's executor or administrator include all losses or damages which the decedent incurred or sustained before the decedent's death." Nev. Rev. Stat. § 41.100(3); see also id. § 41.100(1) (providing that "no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's executor or administrator"). Both an executor and an administrator must be appointed by a court to exercise the authority to administer the decedent's estate. Id. §§ 132.040, 132.130.

Because Nevada statutorily has provided that only the executor or administrator may bring a claim which survives the decedent's death, the heirs or family members may not bring such a claim on the decedent's behalf.  Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 369-70 (9th Cir. 1998).

Mid-Ohio has not met its burden of establishing the panel manifestly disregarded the law.  Mid-Ohio has not presented to this Court evidence that it provided the panel with the above-cited law or that the panel otherwise recognized this law.  Rather, Mid-Ohio made an oral motion to dismiss regarding the standing issue, but it did not cite to the above law in support.  Consequently, it is not clear from the record that the panel recognized the applicable law and then ignored it.

Moreover, it can be inferred from the record that the panel viewed the issue as a mistake in the caption or style of the case, rather than as a question of standing.  The name of the case is The Estate of Lawrence D. Burns, By its Executor, Epifania B. Burns, but in the body of the Statement of Claim, it referred to Epifania as both executor and as primary beneficiary.  Thus, the substance of her claims in her own right were set forth in the initial Statement of Claim, and it can be inferred from the record that the arbitration panel declined to elevate form over substance to find a lack of standing based on a mistake in the caption. The panel referenced the fact that Epifania was the primary beneficiary and could bring the claims in her own right, and that a mistake in styling the case should not preclude the arbitration from proceeding.  Mid-Ohio stated in its own filings that Epifania was bringing the claims as executor and as primary beneficiary.  The panel's refusal to find a lack of standing due to a discrepancy between the caption and the substance of the claims in the Statement of Claim is not a manifest disregard of the law.  The Court therefore will not vacate the arbitration award on this basis.

///

///

**B. Eligibility**

Mid-Ohio argues the panel manifestly disregarded the law because it allowed the claims to proceed even though they were ineligible for arbitration under FINRA Rule 12206.  That rule makes ineligible for arbitration any claim for which six years have elapsed since the occurrence or event giving rise to the claim.  (Supp. Memo., Ex. 11.)  Mid-Ohio contends that the facts show all of its conduct occurred in February and March 2002.  Mid-Ohio therefore asserts any claim related to that conduct became ineligible for arbitration in March 2008.  As Epifania did not file until September 2009, Mid-Ohio contends her claims were ineligible for arbitration and the panel disregarded the FINRA rule by letting the arbitration proceed.

Epifania responds that whether a claim is ineligible under Rule 12206 is a question for the arbitrators and is not reviewable by this Court.  Further, Epifania contends that the event or occurrence giving rise to the claim does not necessarily have to be the date of the purchase of the securities, and the panel was free to consider other events or occurrences, such as when Lawrence Burns discovered Cumberland was a fraud, when the damages occurred, or when the claim accrued.  Epifania also argues the panel could apply tolling principles to Rule 12206.

FINRA Rule 12206(a) provides:

> No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim.  The panel will resolve any questions regarding the eligibility of a claim under this rule.

Although the present rule clarifies that the panel will resolve any questions regarding eligibility, other versions of this and similar eligibility rules did not make that clear.  Courts thus had to resolve the question of whether the court or the arbitrator decided eligibility.  When that was the case, several courts held that because the rule referred to "eligibility" for arbitration, it was a question for the court.  See Prudential Sec., Inc. v. Yingling, 226 F.3d

668, 672 (6th Cir. 2000) (National Association of Securities Dealers ("NASD") Code of Arbitration Procedure § 10304); Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc., 78 F.3d 474, 477-78 (10th Cir. 1996) (NASD Code of Arbitration Procedure § 15); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen, 62 F.3d 381, 383 (11th Cir. 1995) (same); Painewebber Inc. v. Hofmann, 984 F.2d 1372, 1381 (3d Cir. 1993) (same); Edward D. Jones & Co. v. Sorrells, 957 F.2d 509, 512 (7th Cir. 1992) (same). Further, these courts went on to hold that the rule was not a statute of limitations subject to tolling; rather, it was a question of what the parties contractually had agreed was eligible for arbitration, and thus was not subject to tolling. Prudential Sec., Inc., 226 F.3d at 672 n.4; Merrill Lynch, 62 F.3d at 385 at n.4; Painewebber Inc., 984 F.2d at 1381-82; Sorrells, 957 F.2d at 512-13. Some courts also held that the event or occurrence was the purchase or sale of securities, not when the investor discovered the loss. Dean Witter Reynolds, Inc. v. McCoy, No. 94-5779, 70 F.3d 1271, 1995 WL 699619, at *2 (6th Cir. Nov. 27, 1995) (unpublished) ("There is no merit in the Investors' allegations that their injury did not occur until the investments turned sour. Adopting the Investors' interpretation would clearly undermine the intention of § 15 calling for a six-year time limit on the arbitrability of claims, and would enable the Investors to control the running of the time limit while they reaped the benefits of the investments about which they would later complain"); Lindell v. Waddell & Reed, Inc., 962 F. Supp. 103, 106-07 (W.D. Mich. 1997) (same).

Other courts, however, concluded time limitation rules are procedural matters for the arbitrator to decide. For example, the Ninth Circuit concluded that whether a NASD rule requiring submission to arbitration within five years barred the claims was a question for the arbitrators, and it "specifically renounce[d] the contention that the defense of the statute of limitations goes to jurisdiction of the tribunal, whether it be judicial or arbitration." O'Neel v. Nat'l Ass'n of Sec. Dealers, Inc., 667 F.2d 804, 807 (9th Cir. 1982); see also Smith Barney Shearson, Inc. v. Boone, 47 F.3d 750, 753-54 (5th Cir. 1995)

(holding that similar American Stock Exchange rule 605 was a "timeliness" issue of "procedural arbitrability and must be decided by the arbitrator"); <u>FSC Sec. Corp. v. Freel</u>, 14 F.3d 1310, 1312-13 (8th Cir. 1994) (holding application of NASD § 15 was a question for arbitrators, not court). Some courts also have ruled that the rule is subject to tolling. <u>PaineWebber, Inc. v. Landay</u>, 903 F. Supp. 193, 202 (D. Mass. 1995) (finding "nothing either in the terms of the parties' agreement or in Section 15 itself which compels the conclusion that issues of 'tolling' are precluded from consideration under Section 15's six-year eligibility requirement"). And courts have recognized that the relevant event or occurrence from which the time period begins to run is not necessarily the purchase or sale of securities. <u>Merrill Lynch</u>, 62 F.3d at 385 ("If the Cohens prove that Merrill Lynch reported false values for their investments through bogus statements,[] then Merrill Lynch's act of sending the false statements, rather than the initial purchase of the investments, may be the occurrence or event giving rise to their claims." (footnote omitted)); <u>FSC Sec. Corp. v. Freel</u>, 811 F. Supp. 439, 444 (D. Minn. 1993) ("The 'occurrence or event' triggering the claim could be the date of purchase; it could just as plausibly be some other occurrence or event.").

The United States Supreme Court ended at least part of the controversy in 2002 when it ruled that the applicability of NASD Code of Arbitration Procedure § 10304, a similar eligibility rule, was "a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be questions of arbitrability." <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 85 (2002) (quotation omitted). The Supreme Court noted that the "NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it." <u>Id.</u>

Although Mid-Ohio concedes that the question of eligibility was for the arbitrators, it argues the arbitrators ignored the law that Rule 12206 is not subject to tolling

and the limitations period runs from the purchase of the investment in this case, because that was the only triggering event.  The arbitrators did not manifestly disregard the law for several reasons.  First, <u>Howsam</u> undermined the basic premise which courts relied upon to determine eligibility rules like Rule 12206 were not subject to tolling.  Those courts relied on the premise that the eligibility rule was a substantive limit on the agreement to arbitrate, not a statute of limitations.  Thus, the time period was not subject to tolling.  However, <u>Howsam</u> eviscerated that premise, finding that the eligibility time limit was not a question of arbitrability, but a gateway procedural matter for the arbitrator.  Thus, the entire line of cases that suggest Rule 12206 is not subject to tolling is undermined.  Therefore, it would not be manifest disregard of the law not to follow this line of cases post-<u>Howsam</u>.

Further, even before <u>Howsam</u>, there was a split of authority on the question of whether eligibility rules like Rule 12206 were questions of arbitrability for the court to decide or akin to statutes of limitations for the arbitrators to decide.  To the extent the Ninth Circuit addressed the issue, it treated such rules as akin to statute of limitations, and had not held that eligibility rules like Rule 12206 were not subject to tolling.  Thus, Mid-Ohio has not established that the law it alleges the panel ignored was well defined, explicit, and clearly applicable.

Because Rule 12206 is not a strict rule of eligibility, but a question for the arbitrators more akin to a statute of limitations, the arbitrators were free to interpret the rule as they saw fit, including adding in tolling provisions or a discovery rule.  Lawrence Burns first discovered the fraud at Cumberland, and hence the possible failure of Mid-Ohio to conduct due diligence, in 2005.  If the arbitrators adopted tolling or discovery principles and used the 2005 date as the triggering event, that would be within the six-year period in Rule 12206.  The FINRA panel had comparatively more expertise about the meaning of its own rule, and it therefore could weigh the propriety of tolling or the discovery rule in any particular case.  The Court therefore will deny the motion to vacate based on FINRA Rule

12206.

Mid-Ohio has failed to meet its burden of establishing the arbitration panel manifestly disregarded the law.  The Court therefore will deny Mid-Ohio's motion to vacate the award, and will grant Defendant's cross-motion to confirm the award.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff Mid-Ohio Securities Corp.'s Motion to Vacate Arbitration Award and to Stay Proceedings to Enforce Arbitration Award (Doc. #1) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant The Estate of Lawrence D. Burns' Cross-Motion to Confirm FINRA Arbitration Award (Doc. #22) is hereby GRANTED.

IT IS FURTHER ORDERED that the arbitration award is hereby CONFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall seal Defendant Epifania Burns' Memorandum of Points and Authorities (Doc. #24), as it contains unredacted social security numbers in violation of Special Order 108 and the E-Government Act of 2002.

IT IS FURTHER ORDERED that Defendant The Estate of Lawrence D. Burns shall file a redacted version of Epifania Burns' Memorandum of Points and Authorities (Doc. #24) within twenty-one (21) days.


DATED: June 14, 2011

_____
PHILIP M. PRO
United States District Judge

14